■ MIRTON E. BAEZ-PENA, Appellant, v MM TRUCK AND BODY REPAIR, INC., et al., Respondents, et al., Defendants. [56 NYS3d 307]—

Order, Supreme Court, Bronx County (Mary Ann Brigantti, J.), entered January 19, 2016, which granted defendants MM Truck and Body Repair, Inc., M&M Truck and Body Repair, Inc., Sajo Transportation and Johnny Pena's motion for summary judgment dismissing the complaint and all cross claims against them, unanimously reversed, on the law, without costs, and the motion denied.

Plaintiff, while driving on the Major Deegan Expressway,

rear-ended a box truck operated by defendant Johnny Pena, an employee of defendants MM Truck and Body Repair, Inc. and M&M Truck and Body Repair, Inc., and owned by defendant Sajo Transportation (collectively, the Pena defendants). According to plaintiff's deposition testimony, when the accident happened, he was traveling southbound in the right-hand lane of the expressway at a speed no greater than 35 miles per hour. The accident occurred at 3:45 p.m., in traffic that plaintiff described as "medium." The road was dry. Plaintiff stated that the box truck, which had a container attached to it, was moving in front of him at approximately 35 miles per hour and that he had been traveling behind it for approximately three minutes when the accident happened. He testified that he was two car lengths behind the box truck when he saw the container make contact with the Willis Avenue Bridge overpass and come to a complete and sudden stop. At no time did he see the box truck's brake lights activate. After he saw the box truck make contact with the overpass, plaintiff applied his brakes, using strong pressure, but his vehicle skidded forward approximately one car length and struck the rear of the box truck. He did not swerve to either side, because there was no time.

Defendant Pena testified that he had been told that the truck he was driving was 13 feet tall. He traveled regularly on the route he was traveling on the day of the accident and drove beneath the subject overpass approximately 15 times per week before the accident, although not in the right lane, since it had been closed for a project involving the replacement of the bridge. He also recalled that the traffic conditions were "medium" at the time the accident occurred. Pena testified that when the accident happened, he was in the right lane and traveling approximately 40 miles per hour. He noticed nothing unusual about the overpass and did not see anything hanging down before the accident. As soon as he reached the overpass, the truck hit the top of it, and came to a "[d]ead stop." "Within seconds" he felt an impact caused by the vehicle behind him striking the truck.

Plaintiff commenced this action for personal injuries sustained in the accident against, inter alia, the Pena defendants and the entities responsible for the Willis Avenue Bridge Project (referred to herein collectively as Kiewit). The Pena defendants moved for summary judgment dismissing the complaint and cross claims against them, arguing that the deposition testimony established that plaintiff rear-ended the box truck after it became stuck under the overpass and that plaintiff failed to provide a non-negligent explanation for fail-

ing to stop his vehicle in time. In opposition, plaintiff argued that the manner in which Pena operated the box truck created the chain of events that caused the accident, as the truck came to a sudden stop while his vehicle was two car lengths behind it. He asserted that the Pena defendants failed to meet their initial burden to show that they were not negligent, because Pena testified that he knew that the bridge was in the process of being removed and that certain southbound lanes had been closed due to diminished clearance of the overpass during construction. Plaintiff maintained that this was not a routine rear-end collision, because the record showed that he was faced with a sudden emergency situation that was caused by the way Pena operated the truck, and there were triable issues as to whether he acted prudently in response to the situation, which was out of his control and not of his own making. He additionally argued that it was illogical to require him to have a non-negligent explanation for an accident that was triggered by defendants' own actions. Lastly, he asserted that the court should search the record and award him summary judgment on the issue of liability.

Kiewit also opposed the motion, arguing, inter alia, that the record showed that the Pena defendants caused the accident by failing to comply with Vehicle and Traffic Law § 385 (2) and Rules of City of New York Department of Transportation (34 RCNY) § 4-15 (b), which establish a maximum vehicle height of 13 feet, 6 inches. Kiewit submitted an affidavit by Corey Hopper, who was employed as Kiewit's superintendent of operations and was working at the subject location when the accident happened. Hopper asserted that several days before the accident a similar truck failed to clear the overpass, which gave Kiewit occasion to measure the overpass as being 13 feet, 9 inches high at its lowest point. Kiewit also stated that, at some point before the accident, two signs had been installed, on a different overpass a short distance north of the bridge (such that they would have been visible to drivers proceeding in the same direction as Pena), warning drivers not to operate vehicles that were higher than 12 feet, 9 inches.

In their reply papers, the Pena defendants annexed an affidavit by Michael Szymanski, Pena's supervisor, who stated that the highest point of the truck Pena was operating was 13 feet, 5 inches. He also stated that defendants' box truck and container had gone through the same route for three years preceding the accident, without incident.

The court granted the Pena defendants' motion for summary judgment. It found that the testimony established that plaintiff

failed to maintain an adequate distance between his vehicle and defendants' truck at the time the accident happened, and that the emergency doctrine was not applicable, because plaintiff conceded that he was traveling 35 miles per hour and was two car lengths behind defendants' box truck for about three minutes before the accident, but could not stop his vehicle in time after he saw the truck strike the overpass.

A rear-end collision with a stopped vehicle, or a vehicle slowing down, establishes a prima facie case of negligence on the part of the operator of the rear-ending vehicle, which may be rebutted if that driver can provide a non-negligent explanation for the accident (*Passos v MTA Bus Co.*, 129 AD3d 481 [1st Dept 2015]; *Beloff v Gerges*, 80 AD3d 460 [1st Dept 2011]). The Pena defendants argue that plaintiff's contention that a sudden, unforeseeable stop by a lead vehicle can provide such a non-negligent explanation "is contrary to this Court's consistent holding that an allegation that the lead vehicle suddenly stopped is insufficient to rebut the presumption of negligence on the part of the rear-ending vehicle." However, this is simply not accurate (*see Berger v New York City Hous. Auth.*, 82 AD3d 531, 531 [1st Dept 2011] [presumption of negligence "may be rebutted by evidence that the vehicle in front stopped suddenly"]).

This is not to say that there are not many cases in which this Court has held that a sudden stop is insufficient; there are. However, the Pena defendants do not cite any cases from this Court, nor are we aware of any, where a sudden stop by a vehicle on a highway, with normal traffic conditions, resulted in summary judgment in favor of that vehicle. Indeed, Court of Appeals precedent suggests that summary judgment is unwarranted in such a case. In *Tutrani v County of Suffolk* (10 NY3d 906 [2008]), a police officer was driving his vehicle in the middle lane of a three-lane highway when he "abruptly decelerated from approximately 40 miles per hour to 1 or 2 miles per hour while changing lanes" (10 NY3d at 907). The plaintiff was traveling immediately behind the police vehicle and had to slam on her brakes to avoid colliding with it; however, the vehicle behind her then struck her car. The Court reversed the Appellate Division's vacatur of a judgment finding the officer 50% liable for the accident, stating that there was sufficient evidence for the jury to have found him to be a substantial cause of the accident, since he "abruptly slowed his vehicle to a near stop in a travel lane of a busy highway where vehicles could reasonably expect that traffic would continue unimpeded" (*id.*). The Court further held that the negligence of the driver

whose car struck the plaintiff's car "[did] not absolve [the officer] of liability as a matter of law. Clearly, [the officer's] actions created a foreseeable danger that vehicles would have to brake aggressively in an effort to avoid the lane obstruction created by his vehicle, thereby increasing the risk of rear-end collisions. That a negligent driver may be unable to stop his or her vehicle in time to avoid a collision with a stopped vehicle is a normal or foreseeable consequence of the situation created by [the officer's] actions" (*id.* at 908 [citation and internal quotation marks omitted]). In light of *Tutrani*, we simply cannot conclude that Pena's actions were not a proximate cause of the rear-end collision.

In the cases cited by the Pena defendants in support of the proposition that a sudden stop can never provide a non-negligent explanation for an accident, the facts were markedly different from those encountered in *Tutrani* and in this case. For example, in *Morgan v Browner* (138 AD3d 560 [1st Dept 2016]), the lead vehicle signaled left at an intersection but continued straight, and then suddenly stopped. In *Diako v Yunga* (126 AD3d 567 [1st Dept 2015]), which also involved an accident on an expressway, the lead vehicle pumped its brakes and gradually slowed down before it was struck from behind. In *Matos v Sanchez* (147 AD3d 585 [1st Dept 2017]), there were icy road conditions. In each situation encountered in these cases the vehicle behind the one that suddenly stopped had reason to exercise more than the usual vigilance in order to avoid a collision. Here, in contrast, the evidence suggests that plaintiff could have "reasonably expect[ed] that traffic would continue unimpeded" (*Tutrani*, 10 NY3d at 907), since traffic was flowing smoothly and he had no reason to foresee that Pena's truck would not clear the overpass.

Finally, there is certainly an issue of fact whether Pena's negligence caused his truck to suddenly stop in the first place. If Hopper is correct that the height Pena needed to clear was 13 feet, 9 inches, Pena would have been in violation of the 13 foot, 6-inch height maximums imposed by Vehicle Traffic Law § 385 and 34 RCNY 4-15 (b). In addition, Pena testified that he traveled the same route regularly in the days leading up to the accident, and so he had an opportunity to see the warning signs referred to by Hopper in his affidavit, which cautioned drivers whose vehicles were higher than 12 feet, 9 inches. Even though it is true that Pena had cleared the overpass on his previous trips, he had not traveled under the overpass in the right lane before the day of the accident. Under the circumstances, there is a question whether Pena's decision to drive

the truck on the expressway was negligent, such that a jury could find the Pena defendants at least partially culpable for plaintiff's injuries. Concur—Tom, J.P., Mazzarelli, Andrias, Manzanet-Daniels and Webber, JJ.